

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00024-CV

_____


KEN W. GOOD, Appellant

V.

SMITH COUNTY JUDGE, JOEL P. BAKER AND
COMMISSIONER PRECINCT NO. 1, JOANN FLEMING, Appellees


On Appeal from the 7th Judicial District Court
Smith County, Texas
Trial Court No. 08-2718-A


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Carter

OPINION

Whether and how Smith County[1] might get a new jail has been an ongoing public issue. Recently, in some fallout from that debate, Ken W. Good sought a judgment declaring that Joel P. Baker, the Smith County Judge, and JoAnn Fleming, the Commissioner for Smith County Precinct Number 1, had violated[2] the Texas Open Meetings Act (TOMA) by attending meetings to develop a jail plan in secret.[3] He sought "mandamus/injunction" seeking to "stop, prevent, or reverse these violations and any potential violations in the future."[4] Trial to a jury resulted in a quite cryptic judgment, which merely recited the jury verdict and awarded Baker and Fleming attorneys' fees in the amount of $62,338.70.

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]According to Good, he "began hearing rumors" about secret meetings to discuss the county jail. Good filed an open records request seeking, inter alia, "copies of any and all documents provided either directly or indirectly on . . . behalf of Smith County to the Texas Commission on Jail Standards regarding any and all plans for proposed bond election to be placed on the November 2008 ballot for vote by Smith County voters." Before responding to the requests, Baker and Fleming "released their jail proposal to the press for a possible November 4, 2008 bond election," prompting Good to file suit.

[3]"Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE ANN. § 551.002 (Vernon 2004). "A governmental body shall prepare and keep minutes or make a tape recording of each open meeting of the body" that "(1) state the subject of each deliberation; and (2) indicate each vote, order, decision, or other action taken." TEX. GOV'T CODE ANN. § 551.021 (Vernon 2004). "A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV'T CODE ANN. § 551.041 (Vernon 2004).

[4]"An interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." TEX. GOV'T CODE ANN. § 551.142(a) (Vernon 2004).

2

On appeal, Good argues that this judgment is not final because it does not address his claims for declaratory judgment and injunctive relief. He also argues that the trial court erred in awarding attorneys' fees in the absence of a pleading to support the award. Good challenges the legal sufficiency of the trial court's findings of fact and complains specifically about the trial court's admission of the attorneys' bills and affidavits in support of the reasonableness and necessity of the attorneys' fees. We affirm, because (1) the trial court's judgment is final, (2) the award of attorneys' fees is supported by a pleading, (3) the award of attorneys' fees is supported by sufficient evidence, and (4) admitting the affidavits and bills into evidence was harmless error.

*(1)    The Trial Court's Judgment Is Final*

In his first issue, Good questions the finality of the trial court's cryptic judgment. In its entirety, the body of the judgment reads:

> The aforementioned case came to trial in this Court during the week of September 21, 2009. After a trial on the merits to a jury, the jury found for Defendants. After the trial, on December 11, 2009, the Court considered Defendant's Motion of Attorneys' Fees and Plaintiff's Response thereto. The Court after having considered the pleadings and arguments of counsel, the Court finds that Defendants are entitled to attorneys' fees and costs in the amount of $62,338.70.
>
> IT IS THEREFORE ADJUDGED AND DECREED that Plaintiff shall reimburse Defendants for reasonable attorneys' fees and costs in the amount of $62,338.70.

Good complains that the judgment is not final, since it is just an award of attorneys' fees, not any ruling on his request for declaratory judgment or mandamus/injunction.[5]

This Court has jurisdiction only over appeals from final decisions of trial courts and from a few, statutorily listed interlocutory orders. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Vernon 2008). It can be a difficult task to answer the question of finality when a judgment lacks clarity. Given that "all too often judgments which were obviously *intended* to be final were being held interlocutory because of careless draftsmanship," the Texas Supreme Court employs a "long recognized" "presumption of finality for judgments that follow a trial on the merits." *Vaughn v. Drennon*, 324 S.W.3d 560, 562 (Tex. 2010); *Moritz v. Preiss*, 121 S.W.3d 715, 718 (Tex. 2003); *N. E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex. 1966) (origin of "*Aldridge* presumption"). The *Aldridge* presumption states:

> When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to [our procedural rules,] it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.

400 S.W.2d at 897–98. Under the *Aldridge* presumption, "a trial court's judgment need not expressly dispose of all issues and claims in order to be final." *Vaughn*, 324 S.W.3d at 562. "If there is any doubt as to the judgment's finality, then '[f]inality must be resolved by a determination

---

[5]He also argues the court did not dispose of the motions for sanctions contained within Baker and Fleming's answer. The motions for sanctions were denied.

4

of the intention of the court [as] gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'" *Id.* at 563 (quoting *Lehmann*, 39 S.W.3d at 203).

We conclude that the trial court judgment is final. The judgment is titled "Final Judgment." It was entered after a jury trial on the merits and a subsequent bench trial on attorneys' fees. Because the jury found Baker and Fleming did not violate TOMA, there was no practical need for the court to address declaratory judgment and mandamus/injunction claims, which would have required a predicate finding against Baker and Fleming. The record reveals nothing to otherwise "indicate the trial court did not intend to finally dispose of the entire case." *In re Guardianship of Moon*, 216 S.W.3d 506, 509 (Tex. App.—Texarkana 2007, no pet.) (citing *Moritz*, 121 S.W.3d at 719). Moreover, there was no motion by defendants seeking entry of any further judgment, or any further request or suggestion made by Good to the trial court seeking action on his claims for declaratory judgment and/or the mandamus/injunction. While, admittedly, there is no explicit legal declaration within this judgment of the legal effect of the jury verdict, the trial court later denied a motion for judgment *non obstante veredicto* filed by Good, strongly suggesting the trial court's intent that reciting the jury's verdict in the "Final Judgment" indicated the trial court's decision on the merits. All those factors are consistent with the application of the *Aldridge* presumption. *See Aldridge*, 400 S.W.2d at 897–98. The trial court's judgment was final and appealable. *See Moon*, 216 S.W.3d at 508–09.

5

*(2)*     *The Award of Attorneys' Fees Is Supported by a Pleading*

A jury trial was held in September 2009 on the underlying issues of the Open Meetings Act. Before jury deliberation, the parties entered into the following stipulation entered into the record:[6]

> And that counsel for the Plaintiff and Defendant have agreed and stipulated that we're not going to submit the issue of attorneys fees to the jury, and instead we would reserve that and after the trial we'll either have stipulations with respect to that issue or submit it to the Court for the Court's consideration if to assess and how much to assess.

On December 4, 2009, approximately three months after receiving a favorable jury verdict, Baker and Fleming filed a motion for attorneys' fees under TOMA and the Uniform Declaratory Judgment Act (UDJA). At the conclusion of the bench trial on attorneys' fees held December 11, 2009, the trial court awarded Baker and Fleming $62,338.70.

Good argues that no affirmative pleading requesting attorneys' fees was filed, in that Baker and Fleming's answer requested merely that they be "award[ed] all other relief to which [they are] entitled."

The decision to grant or deny attorneys' fees under TOMA and the UDJA[7] is within the trial court's discretion and cannot be reversed absent an abuse of discretion. *Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 701 (Tex. App.—San Antonio 1998, pet. denied); *Estopar*

---

[6]As addressed in detail below, the language of the stipulation entered has given rise to two interpretations.

[7]In its findings of fact and conclusions of law, the trial court appears to rely on both statutes as justification for the attorneys' fee award.

6

*Holdings*, *Inc. v. Advanced Metallurgical Tech.*, *Inc.*, 876 S.W.2d 205, 210 (Tex. App.—Fort Worth 1994, no writ).

"Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity." *Alan Reuber Chevrolet*, *Inc. v. Grady Chevrolet*, *Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.) (quoting *State v. Estate of Brown*, 802 S.W.2d 898, 900 (Tex. App.—San Antonio 1991, no writ) and citing *In re Pecht*, 874 S.W.2d 797, 803 (Tex. App.—Texarkana 1994, no writ)). In TOMA and UDJA actions, an award of attorneys' fees is permissive, not mandatory. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008); TEX. GOV'T CODE ANN. § 551.002 (Vernon 2004).[8] Therefore, to be entitled to an award of attorneys' fees under TOMA or the UDJA, Baker and Fleming were required to file an affirmative pleading requesting them, unless the issue was waived or tried by consent. *Alan Reuber Chevrolet*, 287 S.W.3d at 884; *see Klaver v. Klaver*, 764 S.W.2d 401, 405 (Tex. App.—Fort Worth 1989, no writ); *Wolters v. White*, 659 S.W.2d 885, 888–89 (Tex. App.—San Antonio 1983, writ dism'd).

We find that the motion for attorneys' fees filed by Baker and Fleming—even though it was filed three months after the jury's verdict—constituted a written pleading supporting the

---

[8]"The court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action under Subsection (a). In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law." TEX. GOV'T CODE ANN. § 551.142 (Vernon 2004).

attorneys' fee award.[9]  This case is similar to the *Swate* case.  *See Swate*, 966 S.W.2d 693.  In

that case, Tommy Swate filed a petition for declaratory judgment and injunctive relief alleging

violations of TOMA committed by the Medina County Hospital board.  *Id.* at 695–96.  In a

bench trial, the judge denied relief sought in Swate's petition.  *Id.* at 696.  Before final judgment

was entered, the hospital filed a motion for attorney's fees, and the court granted it.  *Id.*  Swate

argued that the trial court erred in awarding attorney's fees, because the Hospital's pleadings did

not support such an award.  *Id.* at 701.  Our sister court in San Antonio rejected Swate's

argument, reciting the following:

> The trial court has discretion to grant a party's request for a post-verdict,
> pre-judgment trial amendment unless "the opposing party presents evidence of
> surprise or the amendment asserts a new cause of action, and thus is prejudicial on
> its face, and the opposing part [sic] objects to it."  Similarly, post-verdict motions
> for attorney's fees that effectively serve as trial amendments may be granted within
> the trial court's discretion.

*Id.* (citations omitted).  Reasoning that a party is not entitled to attorneys' fees under TOMA until

it has prevailed, the San Antonio court held that post-trial motion, filed before entry of a final

judgment, was sufficient to support the award.  *Id.* at 702.  Here, although Good objected to the

motion for attorneys' fees, focusing on the issue of trial by consent and lack of other pleading to

support the award, Good did not allege or otherwise present "evidence of surprise or injury," or

allege that the motion asserted a new cause of action such that it was prejudicial on its face.  *Id.* at

---

[9]Whether a pleading is an affirmative claim for relief is determined by the facts alleged, not by the name given the plea or by the form of the prayer for relief.  *Doolin's Harley-Davidson, Inc. v. Young*, No. 06-05-00101-CV, 2006 WL 27983, at *1 (Tex. App.—Texarkana Jan. 6, 2006, no pet.) (mem. op.).  The motion for attorneys' fees was a claim for affirmative relief.

8

701–02.[10]   Therefore, consistent with *Swate*, we find that the trial court was within its discretion in awarding attorneys' fees based on Baker and Fleming's pleading, their post-verdict, prejudgment motion for attorneys' fees.[11]

*(3)     The Award of Attorneys' Fees Is Supported by Sufficient Evidence*

The trial court entered findings of fact and conclusions of law.[12]   Good challenges two of these findings for legal sufficiency only.[13]

The first challenged finding is "Defendants' pleaded for attorneys' fees in the amount of $80,903.38, but at the hearing waived $640.00.   The Court disallowed an additional $2,340.00, leaving $77,929.38 prayed for."   Specifically, Good argues:

> The evidence has demonstrated conclusively that the defendants did not plead a
> claim for attorney's fees.   Further, there is no evidence that they plead [sic] a claim
> for $80,903.38.   In addition, the evidence relating to the specific amounts is from
> the Plaintiff's Exhibit A which was the sole exhibit admitted at trial and it was not

---

[10]Good did not consider, and thus did not challenge, the allowance of the motion for attorneys' fees to be considered a trial amendment.   *See Rocha v. Ahmad*, 676 S.W.2d 149, 154 (Tex. App.—San Antonio 1984, writ dism'd) ("The allowance of a trial amendment, where a defect, fault or omission is called to the attention of the trial court during trial, will not result in a reversal in the absence of a plea of surprise, and a request for postponement or continuance.").

[11]In their briefing to this Court, both parties cited to the stipulation reserving the issue of attorneys' fees, and argued the issue of trial by consent.   Good made the reasonable argument that, since Baker and Fleming did not have a pleading seeking attorneys' fees at the time, he was stipulating only to the reservation of *his* attorneys' fees.   Based on this theory, Good filed written objections to Baker and Fleming's motion for attorneys' fees and urged the trial court not to find trial by consent.   Baker and Fleming maintain that, because Good knew they could be entitled to attorneys' fees under TOMA as substantially prevailing parties, the stipulation reflected an understanding that the issue of either party's fees would later be tried by consent.   We need not resolve this dispute.

[12]An award of attorneys' fees is entrusted to the sound discretion of the trial court, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law.   *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *In re Estate of Bean*, 206 S.W.3d 749, 763 (Tex. App.—Texarkana 2006, pet. denied).

[13]There is no challenge to the factual sufficiency of the evidence supporting the award.

properly authenticated or proven to be a business record. Therefore, there is no evidence to support this finding for two reasons: (1) there is no evidence that the defendants' plead [sic] for attorney's fees; and (2) the amounts are only supported by an exhibit that was wrongfully admitted.

By concluding, above, that the motion for attorneys' fees was a pleading that supported the award of attorneys' fees, we have disposed of Good's first argument. We now address whether there was "evidence relating to the specific amounts" in the trial court's finding.

"When an appellant is challenging the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding." *Brockie v. Webb*, No. 05-09-00833-CV, 2010 WL 5395658, at *3 (Tex. App.—Dallas Dec. 30, 2010, no pet.) (discussing standard for addressing challenges to legal and factual sufficiency of attorneys' fees) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ)). When reviewing the record, we determine whether any evidence supports the award of attorneys' fees. *Id.* If more than a scintilla of evidence in support exists, the legal sufficiency challenge fails. *Id.* (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

The crux of this issue is the form of the attorneys' fees evidence presented here, representations to the trial court by counsel. Baker and Fleming's counsel stated to the trial court that the total bill was $80,903.38. At the hearing, Good challenged specific portions of the bill to which Baker and Fleming's counsel stated, "[W]e're happy not to charge." The record

10

establishes Baker and Fleming agreed to reduce their bill by the following charges: "$60.00" for "something in here that was pursuant to that Travis County litigation,"[14] "$520.00" for "another reference to the Austin litigation," and two "$30.00" charges for "telephone call to Stan Springerly regarding Attorney General opinion request," totaling $640. As to the "$2,340.00 that was for E-Mails," Good complained that "they billed like 7.6 hours, 4.1 hours, 4.2 hours" for review of "E-mails that were previously produced by Ms. Fleming," and that these charges amounted to "fifteen hundred and twenty[,] eight hundred and twenty, eight hundred and forty." It appears the trial court disallowed recovery for the first two charges of $1,520 and $820, totaling $2,340, and allowed recovery for the $820 charge.

An attorney's unsworn statements constitute evidence where no objection is made to the absence of the oath. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); *Dirksen v. Flynn*, No. 04-10-00126-CV, 2011 WL 192651, at *3 (Tex. App.—San Antonio Jan. 12, 2011, pet. filed) (mem. op.). Because more than a scintilla of evidence existed to support the first finding of which Good complains—that Baker and Fleming pled for $80,903.38 in attorneys' fees, "waived $640"

---

[14]Smith County feared that Good's open records requests "included sensitive security-related information which, if revealed, might potentially place jail employees and inmates at risk." Smith County sought an open records ruling from the Texas Attorney General's Office to determine whether it could withhold the information requested. On October 6, 2008, the attorney general issued a decision requiring Smith County to respond to Good's requests. Smith County filed suit in Travis County against the Attorney General to appeal the decision. Thereafter, Good filed this suit in Smith County against Baker and Fleming. On December 5, 2008, Baker and Fleming filed a "Motion to Abate and Alternative Answer and Request for Disclosure," seeking abatement because Good had intervened in the Travis County litigation asserting the "same allegations." They sought imposition of sanctions, which were denied, against Good in the form of reasonable attorneys' fees, complaining that Good's suit was "presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

11

of the bill, and the trial court did "not give any credit for $2,340.00 that was for E-Mails"—we overrule Good's legal sufficiency challenge to this finding.

Good next complains that no evidence supported the trial court's finding of a reasonable attorneys' fee award in the amount of $62,338.70. The Texas Disciplinary Rules of Professional Conduct Rule 1.04 is a guide for the fact-finder determining reasonableness and necessity of attorneys' fees. *Banda*, 955 S.W.2d at 272; *Dirksen*, 2011 WL 192651, at *3; *Bean*, 206 S.W.3d at 763. The standards prescribed by Rule 1.04 include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A-1 (Vernon 2005).

Counsel for Baker and Fleming stated he wished to present evidence on, and argued each of, the above factors during the bench trial. Baker and Fleming's counsel testified the total fee sought was $80,903.38. With respect to the first factor, counsel argued that the TOMA case

required considerable research due to the novelty of the issues involved, that Baker and Fleming "produced a little over 2,000 pages to Mr. Good at various points," that "Mr. Good produced approximately 2,664 pages of discovery" and "took approximately nine depositions," and that "this case had pretty substantial discovery at every level." The level of complexity and amount of discovery "required [counsel] to take time out of our schedules." Baker and Fleming's attorneys represented Smith County for years and dedicated their practices "to the representation of governmental entities and elected officials." Counsel testified that "my hourly fee is $150.00 an hour. Mr. Davis' hourly fee is $200.00 an hour" and that the fee was "an extremely reasonable fee" considering "there are some attorneys here in East Texas who are charging $400.00 an hour." Baker and Fleming reiterated that the case was filed a few days after Election Day, "[t]he reputations of our County governmental officials" were at stake, and the case was set for trial in September, prior to the following Election Day. The nature of the case and the "elected officials who are on various committees and the latter part of summer when a lot of people are away on vacation" led to "significant time limitation[s]." The fees were fixed hourly charges, not contingent on the outcome.

The trial court affirmatively stated it considered these factors. It considered the time spent in research, drafting, answering pleadings, attending hearings, taking depositions, and noted that "trying a week-long jury trial precluded or prevented employment of the attorneys in other legal matters." The court found that the fees requested were the same customarily charged, $150–200

per hour, that the attorneys obtained the best possible result by winning the jury's verdict, and that the "experience, reputation, and ability of the attorneys on both sides were of the highest caliber."

The trial court also reduced the attorneys' fee award. It stated:

> Defense counsel won an 11-1 verdict after the Court required further deliberation by a jury that was, at the time, divided 7-5. In the Court's opinion, then and now, the verdict could have gone either way . . . . the Court did not find Plaintiff to have acted in bad faith . . . . The Court reduced the amount of defense attorney's fees by 20% to compensate Plaintiff for any fault or responsibility of Defendants for informally planning the jail bond election. Defendants, aware two previous jail bond elections had failed, proceeded as a self-appointed committee, however lawfully, innocently, or well-intentioned, to plan a third such election. They knew, or should have known, their actions would invite scrutiny, condemnation, and possible legal action by determined jail bond opponents. Because they chose to depart from the customary method of planning a bond election, they bear some degree of responsibility for what followed.

A twenty-percent reduction of the $77,929.38 sought, yields the amount of the award, $62,338.70.

Because more than a scintilla of evidence supports the second complained-of finding (as well as the award), we find it was supported by legally sufficient evidence.

*(4)     Admitting the Affidavits and Bills into Evidence Was Harmless Error*

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

*(A)     The Affidavits*

Baker and Fleming's motion for attorneys' fees attached the affidavits of Darren Coleman and Deborah Bonner. Each affidavit stated:

14

I have reviewed the bills of the Defendants' attorneys in the present case. In my opinion, the bills in the present case represent the reasonable value of attorneys fees, costs, and expenses reasonably incurred in the present litigation. Furthermore, the fee charged by the attorneys in the present litigation was reasonable and commensurate with the fees charged in the East Texas area. In considering the reasonableness and necessity of the attorneys' fees, I considered the fact that there were approximately 2028 pages of documents produced by Defendants in the present action. I also considered the fact that there were 2664 pages of documents produced by Plaintiff in the present action. I also considered the fact that the parties took approximately 10 depositions in the present action.

On the same date as the bench trial on the attorneys' fees, Good filed a written objection to the affidavits on the bases that Coleman and Bonner were not timely disclosed[15] and that filing of the affidavits constituted surprise.

A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
       (1)    there was good cause for the failure to timely make, amend, or supplement the discovery response; or
       (2)    the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). The rule is mandatory, and the penalty—exclusion of evidence—is automatic, absent a showing of: (1) good cause, (2) lack of unfair surprise, or (3) unfair prejudice. *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 902 (Tex. App.—Texarkana 2004, pet. denied). The burden of establishing good cause or lack of unfair surprise was on Baker and Fleming. *Wal-Mart Stores, Inc. v. Tinsley*, 998 S.W.2d 664, 671 (Tex. App.—Texarkana 1999, pet. denied); *see* TEX. R. CIV. P. 193.6(b). While the trial court has the discretion to determine whether the

___
[15]Baker and Fleming do not, in their brief, contest the allegation of failure to disclose Coleman and Bonner.

15

offering party has met his or her burden of showing good cause to admit the testimony, and good cause may be implicitly found, the "record must support a finding of good cause or lack of unfair surprise." *Smoak*, 134 S.W.3d at 902; *Tinsley*, 998 S.W.2d at 671 (citing *Alvarado*, 830 S.W.2d at 914).

Our review of the record indicates that there is no evidence of good cause in this record. Baker and Fleming argue a lack of unfair surprise or prejudice in that "[i]t was abundantly clear that attorney's fees are an issue in this case." Good rebuts this argument by claiming that he did not realize that Baker and Fleming were seeking attorneys' fees until the filing of the motion for attorneys' fees. He argues that, if Baker and Fleming believed they were going to trial on the issue of their attorneys' fees, they were required to supplement their requests for disclosures. Resolution of whether Good experienced unfair surprise or prejudice due to the filing of the affidavits is unnecessary.

At the hearing, Good objected that the affidavits were hearsay. Affidavit testimony is sufficient to serve as proof that attorneys' fees are reasonable and necessary if submitted in correct form. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001 (Vernon 2008). If, however, the affidavits of attorneys' fees do not comport with the statute, they are inadmissible hearsay. *Adams v. State Farm Mut. Auto. Ins. Co.*, 264 S.W.3d 424, 430 (Tex. App.—Dallas 2008, pet. denied); *Hong v. Bennett*, 209 S.W.3d 795, 800 (Tex. App.—Fort Worth 2006, no pet.) (citing *Castillo v. Am. Garment Finishers Corp.*, 965 S.W.2d 646, 654 (Tex. App.—El Paso 1998, no pet.); *Beauchamp*

16

*v. Hambrick*, 901 S.W.2d 747, 749 (Tex. App.—Eastland 1995, no writ)). Section 18.001 requires that the affidavits be made by persons who provided the service or by persons in charge of the records showing the service provided and charge made. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(2). The affidavits were required to be served at least thirty days before the date on which evidence was first presented at the bench trial. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(d). Here, there was no evidence in the record that Coleman and Bonner provided any service to Baker and Fleming, that they were in charge of records, or that they were otherwise affiliated with Baker and Fleming's counsel. Moreover, the affidavits were filed December 4, 2009, and the trial on attorneys' fees was held seven days afterward. Thus, Baker and Fleming's counsel did not comply with the requirement of serving a copy of the affidavits to Good at least thirty days before the trial. Therefore, the affidavits were inadmissible hearsay. *Adams*, 264 S.W.3d at 430. It was error to admit them.

(B) *The Bills*

Good's only written objection to the bills was on the basis that they included items incurred in the Travis County litigation. This is not a point of complaint on appeal.[16] Rather, Good's complaint deals with an oral hearsay objection and objection regarding the "evidentiary predicate" to authenticate the bills.

---

[16]During the hearing, the trial court gave Good the opportunity to contest particular charges in the attorney bills. The result was agreement by Baker and Fleming's counsel, as set forth above, to remove charges related to the Travis County litigation from the bills.

17

During the hearing, Baker and Fleming's counsel referred to the bills and stated "as an Officer of the Court, I would represent to you these fees are reasonable. We believe that if anything, the fees that we charge are moderate and that the work that we did was necessary." The following events led to Good's oral objections:

> THE COURT: Well, I understood he was offering it as evidence. I didn't hear those specific words, but is that your intent to offer that as evidence, the document entitled "Fees" that was dated December 8th, 2008?
>
> MR. IGLESIAS [for Baker and Fleming]: I'm sorry. I'm not entirely sure which document.
>
> THE COURT: Well, it's on your letterhead as Exhibit F on your Motion for Attorney's Fees, in which you outlined what your – how your fees were earned and how much was earned.
>
> MR. IGLESIAS: Well, yes, Judge. We do hope that that is considered by the Court in making its determination, and these are certainly the fees that we're seeking.
>
> THE COURT: Well, are you offering those as an Exhibit –
>
> MR. IGLESIAS: Yes, sir, we are.
>
> THE COURT: -- in the hearing?
>
> MR. IGLESIAS: Yes, sir. We're submitting that as Exhibit F into evidence.
>
> THE COURT: That's admitted, by the way.
>
> MR. IGLESIAS: Thank you, Judge.
>
> MS. KENT [for Good]: Your Honor, we had an objection to them. There's not been evidentiary predicate to Exhibit F . . . .

. . . .

THE COURT:   Let me say this.   The Court is of the opinion that if there's any error in the Court's accepting . . . the statement of fees which were prepared by the attorneys, that is harmless error[17]

. . . .

MS. KENT:  . . . . And then next we object to the admission of the exhibit because the affidavit and exhibit attached to that affidavit – because it's hearsay . . . .

Rule 901 of the Texas Rules of Evidence requires, as a condition precedent to admissibility, that there be "evidence sufficient to support a finding that the matter in question is what its proponent claims."   TEX. R. EVID. 901(a).   This can be done by testimony of a witness with knowledge that the matter is what it is claimed to be.   TEX. R. EVID. 901(b)(1).   The bills were on the attorney's letterhead, and counsel stated while referring to them, "these are certainly the fees that we're seeking."   Counsel offered them as the fees that were earned and how much was earned and stated, "We were very careful when we went through these bills."   We find that the trial court, in its discretion, could conclude that the attorney's testimony was sufficient to prove the bills were genuine.

Next, Good objected to the bills as hearsay and stated there was "not a business record predicate laid in connection with this."   Rule 803(6) creates a hearsay exception for properly authenticated business records.   *See* TEX. R. EVID. 803(6).   The foundation for the business

---

[17]Concluding that an error would be harmless is not a valid reason to commit the error.

records exception has four requirements: (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they record, and (4) the records were made by a person with knowledge who was acting in the regular course of business. *Powell v. Vavro*, *McDonald*, *& Assocs.*, 136 S.W.3d 762, 765 (Tex. App.—Dallas 2004, no pet.). Baker and Fleming bore the burden of showing that the bills fit within an exception to the general rule prohibiting the admission of hearsay evidence. *Volkswagen of Am.*, *Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004). Although the trial court might be justified in assuming certain aspects of the four foundational requirements necessary to establish the bills as business records, there must have been some testimony to establish the four requirements. Counsel admitted, "I guess I'm really not sure on how to address that as I'm not sure what predicate is necessary for these bills." It was error to admit the bills.

### (C) Harm Analysis

To obtain reversal for any error arising from erroneous admission of evidence, Good must show that the error probably resulted in an improper judgment. *Interstate Northborough P'ship*, 66 S.W.3d at 220. To make this determination, we must review the entire record. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). The complaining party must generally demonstrate that the "judgment turns on the particular evidence admitted." *Id.* "Clearly,

20

erroneous admission is harmless if it is merely cumulative." *Medina v. Hart*, 240 S.W.3d 16, 22 (Tex. App.—Corpus Christi 2007, pet. denied).

Because the affidavits were cumulative of the testimony by Baker and Fleming's attorneys regarding reasonableness and necessity of fees, Good cannot meet his burden to demonstrate that harm came from admitting the affidavits. *Rainbo Baking Co. v. Stafford*, 787 S.W.2d 41, 41 (Tex. 1990). The bills, on the other hand, contained a full itemization of the work done. Thus, the bills were not merely cumulative of counsel's testimony. But, from our view of the record, the presence or absence of itemization was not important to the trial court's ruling on the attorneys' fees. Also, it is clear that the trial court engaged substantially in analyzing Good's substantive concerns over the bills and reduced the claim substantially. Finally, the other evidence of attorneys' fees was sufficient to support the award of $62,338.70. We, therefore, conclude that the admission of the bills was not reasonably calculated to cause and probably did not cause rendition of an improper judgment.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

21

DISSENTING OPINION

This "final judgment" does two things:   (1) it states the defendants won the jury trial; and (2) it grants the defendants attorneys' fees.   That is all it does.   It does not address the merits of the case.   The only indication that this order is a final judgment is the title.   The jury made a factual determination, but the document has no legal declaration that such determination authorizes the rendition of a judgment; none was rendered.

Generally when a trial on the merits is conducted and some parties or causes of action are not explicitly disposed of in the judgment, it is presumed that those were essentially abandoned and the judgment is final.   *Vaughn v. Drennon*, 324 S.W.3d 560 (Tex. 2010); *Moritz v. Preiss*, 121 S.W.3d 715 (Tex. 2003) (judgment failing to dispose of all parties presumed final); *N. E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 898 (Tex. 1966).   But in order to make such a presumption, there must be a judgment upon which the presumption may be based.   "The Aldridge presumption of finality does not apply to . . . dispositions that do not adjudicate the merits of the case, . . . ."   2 William V. Dorsaneo III, *Texas Litigation Guide* § 131.06 (Lexis through 2011).

If a judgment is rendered by merely stating one party prevailed in the jury trial, why is a judgment even necessary?   In essence, that makes the jury verdict the final judgment.   The rule of procedure requires that a judgment "give the party all the relief to which he may be entitled."

22

TEX. R. CIV. P. 301. If the jury verdict entitled the defendants to a legal declaration that plaintiffs take nothing, they did not receive the relief to which they were entitled.

If there is any doubt as to the finality of the judgment, then the intention of the court is interpreted by the language of the decree and the entire record, sometimes aided by the conduct of the parties. *Vaughn*, 324 S.W.3d at 563 (citing *Lehmann*, 39 S.W.3d at 203). The language of the decree should at least raise a question of the finality of the judgment before we engage in the presumption that it is. The determination of the finality is not affected by the trial court's ability to reconsider the order. "It is the court's order that counts, not the stated reasons or qualifications. *Jampole v. Touchy*, 673 S.W.2d 569, 574 (Tex. 1984) (orig. proceeding), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992).

The procedural sequence of events does not assist in determining this is a final judgment. Following the jury trial in September 2009, the attorneys' fee hearing was conducted and this order was entered on December 11, 2009. Even looking at matters outside the order, it appears that this order was intended as an interlocutory order, reciting that defendants had won the jury verdict, were entitled to attorneys' fees, and establishing the amount of attorneys' fees to be incorporated into a final judgment.

The majority opinion takes solace in the fact that the trial court denied Good's motion to modify, correct, or reform the judgment and for judgment notwithstanding the verdict as support for a conclusion that the attorneys' fee order was really a final judgment. But these motions do

23

not treat the attorneys' fees order as a final judgment.  The post-trial motions only involved whether the attorneys' fee order was proper; Good alleged that no pleading supported the attorneys' fee order, no admissible evidence of attorneys' fees was introduced, and the trial court abused its discretion in awarding attorneys' fees.  Defendants made several counter-arguments, but the entire controversy was the propriety of attorneys' fees.  Good's only specific prayer in each motion was that the trial court "deny the Defendants' motion for attorneys' fees . . . ."  If anything, these motions and their denial support an inference that the attorneys' fee order was interlocutory and the parties were still attempting to litigate that issue before ultimately incorporating the attorneys' fee finding into a final judgment.   The post-trial motions and order do not support the argument that the order was an effective final judgment.

Since this order makes no disposition of the merits of the matter, it is not a final judgment. I dissent to the majority opinion treating it as one.   I would dismiss this proceeding.


Jack Carter
Justice

Date Submitted:      February 8, 2011
Date Decided:        March 25, 2011

24